Bradbury, J.
 

 The defendant in error filed in the court of common pleas the following petition : Plaintiff says that the defendant is, and was at the time of the grievances hereinafter complained of, the duly elected, qualified and acting mayor of the incorporated village of Spring Valley, in the county of Greene. That on the thirtieth day of May, 1895, at said village, said defendant, as such mayor, issued a warrant for the arrest of plaintiff and caused him to be arrested for the pretended violation of an ordinance of said village, and deprived of his liberty for the space of * * hours, on a pretended charge of disorderly conduct, and thereafter and on said daj^ plaintiff, in order to secure his liberty, was compelled by defendant to enter .into a recognizance for his appearance before said defendant, to answer to said pretended charge, on the eighth day of June, 1895, to which time the trial of said pretended charge was adjourned by said defendant.
 

 On said eighth day of June, 1895, at the time to which the trial of said pretended charge had been adjourned, plaintiff appeared before said defendant to answer to said pretended charge and for a trial thereof, when the defendant again adjourned such trial to the tenth day of June, 1895, at 6 o’clock, P. M.
 

 On said tenth day of June, 1895, at the time to which the trial of said pretended charge had been adjourned, said defendant, as such mayor, in the absence of plaintiff, examined divers witnesses under oath and had a pretended trial before him of said pretended* charge; adjudged the defendant
 
 *522
 
 guilty of the facts stated therein and assessed a fine and the costs of said proceedings, amounting to $10.95, against plaintiff, all of which took place without the presence of the plaintiff, or an opportunity given him to testify in his own behalf, cross examine the witnesses against him or to offer the testimony of witnesses in his favor. Plaintiff appeared before defendant on said tenth day of June, 1895, as nearly the hour fixed for the trial of said pretended charge as it was
 
 practicable1
 
 for him to do and demanded of defendant a trial of said pretended charge, and an opportunity to testify and to offer testimony in his behalf, but the defendant refused to comply with said demand, and upon the refusal of plaintiff to pay the fine and the costs, as aforesaid assessed against him, the defendant unlawfully, wrongfully, forcibly and maliciously caused plaintiff to be imprisoned in the prison- of said village and there kept during the night of the said tenth of June, 1895, and until the eleventh day of June, 1895, without sleep and without a suitable bed on which to sleep; and refused to release plaintiff from said imprisonment until the payment of said fine and costs were secured.
 

 The whole of said proceedings by defendant against plaintiff were unlawful, wanton, and malicious, and have greatly distressed and humiliated plaintiff and injured him in his good name and character, and by reason of the premises plaintiff has been damaged in the sum of five thousand dollars.
 

 Wherefore the plaintiff prays judgment against said defendant in the sum of $5,000, his damages so as aforesaid sustained.
 

 A demurrer to this petition was interposed and overruled, and exception to the ruling noted. The
 
 *523
 
 defendant then filed an answer upon which trial was had in the court of common pleas, resulting in a verdict for the plaintiff below for $525. The defendant below interposed a motion for a new trial, based on a number of distinct grounds, one of which was that the verdict was excessive. The court of common pleas being of the opinion that this ground was well taken, required the plaintiff below to remit $225 thereof. This sum being remitted, the motion for a new trial was overruled and a judgment rendered for $300, which, on error, the circuit court affirmed. Whereupon the defendant below brought the case to this court to obtain a reversal of the judgments of both courts. A bill of exceptions not having been filed in this court, no question that arose on the trial is presented for our consideration, and our inquiry is limited to a consideration of the sufficiency of the petition. The petition shows that the defendant in error, having been on May 30,1895, arrested for violating an ordinance of the village of Spring Valley, Ohio, was on the same day brought before the plaintiff in error, who was mayor of that village, and gave bond for his appearance before the mayor for trial on the eighth day of June following; that he appeared on that day for trial, when the case was again adjourned until the tenth day of the same month, at six o’clock P. M.; that when the day and hour to which the trial had been last adjourned had arrived the defendant in error did not appear. Whereupon the plaintiff in error, as such mayor, proceeded to try, and did try, and convict him and adjudged him to pay a fine, all of which was done in his absence; and afterwards, for its non-payment, caused him to be imprisoned in the village jail. The defendant in error appeared
 
 *524
 
 after liis trial and conviction was had and demanded a trial which wasN denied him. This, however, is not material to the question to be considered now, as it would only affect the question of the amount of damages, and there being no bill of exceptions, that question is not before the court. ' If ,the mayor had jurisdiction to try and convict- defendant in error in his absence, the fact that he afterwards refused to open up the judgment.and retry him when he had appeared would not give a right of action. While on the other hand, if the mayor in the absence of the defendant in error was without jurisdiction to proceed with, the trial the ■ judgment was void, and a subsequent imprisonment unlawful, without regard to the action of the mayor in respect to the demand to be retried. The only legitimate effect this refusal to retry the cause could.have would be as to the amount of the recovery. The first question, therefore, to be considered is whether the mayor had jurisdiction to try and convict and assess a fine against the defendant while he was absent. And second if he had not such' jurisdiction was he liable for the injuries that resulted to defendant in error from his unauthorized action. Counsel for plaintiff in error does not contend that such a trial was authorized by law, but insists that it was not void, but erroneous only, and that as the conviction might have been reversed on error it was the only remedy defendant in error had. How the judgment could have been reversed on error, was not pointed out by counsel. Nothing appears to show that the record of the trial by the mayor disclosed the absence of the defendant in error. He was not there to take a bill of exceptions showing the fact of his absence. The trial
 
 *525
 
 was set for six o’clock p. M. and in fact occurred after that hour, and the defendant committed to the village prison that very night. The brief time that intervened between his conviction and commitment to prison afforded no opportunity for him to invoke, if the law affords it, an independent proceeding in the courts of the state to establish the existence of the fact that he had been tried and convicted while absent. All this may be immaterial if the mayor had jurisdiction to try and convict a party while absent, but it shows the consequences that may result from holding that such jurisdiction does exist and therefore may not be wholly unworthy of consideration in determining its existence.
 

 The court held by a village mayor is of limited jurisdiction. His power to try persons accused of violating village ordinances or the criminal laws of the state is only such as has been conferred by statute. If such jurisdiction has not been thus created, it does not exist. Sections 1823 to 1830 inclusive, Revised 'Statutes, confer upon village mayors whatever criminal jurisdiction they possess, except in certain special matters not pertinent to the present inquiry. These sections, however, relate exclusively to the subject-matter-That is, they in general terms prescribe the several offenses that may be tried in a mayor’s court. In respect of some of these offenses, whether they be violations of state laws or of village ordinances, his jurisdiction is final. That is, he may, without the intervention of a jury, try and convict persons brought before him charged with their commission. In regard to certain other offenses he has jurisdiction to render final judgment after the accused has been convicted by a jury. Or he may
 
 *526
 
 try, and if he convict, render final judgment, even of imprisonment, if accused in writing waive the right to a jury trial. While in a third class of offenses, notably felonies, the mayor has only the powers of an examining court and can only discharge or recognize the accused to the court of common pleas or probate court. The proceedings authorized by the sections of the foregoing statute seem to contemplate the personal presence of the accused. Indeed some of those provisions are inapplicable unless he is present. Other statutory provisions may be found that bear on the question. For instance, section 7129, Revised Statutes, reads as follows: “A sheriff, deputy sheriff, constable, marshal or deputy marshal, watchman, or police officer, shall arrest and detain any person found violating any law of this state, or any legal ordinance of a city or village, until a legal warrant can be obtained.” This section appears in title II, chapter
 
 2
 
 of our Revised Statutes. And the other sections of this title and chapter contemplate quite as clearly that persons charged with offenses against state laws or municipal ordinances shall be arrested, taken in custody and carried before magistrates for examination or trial to answer in person to the offense charged. This is the only method known to our law by which offenders are brought before the courts. Though if one, knowing himself in danger of arrest, voluntarily appears and submits to the jurisdiction of a court or magistrate it would be equally efficient. Doubtless in a certain sense the jurisdiction of a mayor or other magistrate over any- particular criminal cause begins with the filing of an affidavit and issuing of a warrant for the arrest of the accused. But it could hardly be contended that the magistrate
 
 *527
 
 thereby obtains such jurisdiction over the person of the accused that, although not arrested at all, or if arrested, he should escape that, nevertheless, the magistrate could proceed to try, convict and sentence him, and afterwards issue a mittimus for his commitment to prison, just as if the offender had been arrested and brought before the magistrate.
 

 If a magistrate is without power to try one who has never been brought before him, although arrested, what sound reason is there to suppose that such jurisdiction exists in the case of one who has been brought before him, but whose trial has been adjourned to a future day and he liberated on bond and does not appear at the time set. After bail has been accepted he is no longer under the control or dominion of the magistrate or officer who made the arrest. His person is as free from restraint by them as if he had not been arrested at all. He may go and come as he chooses, subject only to the friendly custody of his bondsmen and the penalty named in the bond. If he does not appear pursuant to the bond he forfeits the penalty, and also becomes liable to rearrest, but until rearrested no sound reason is perceived for contending that his person is subject to the authority of the magistrate. The magistrate is not supposed to know where he is, he may have left the state or county and thus be beyond the reach of process, or he may be sick or dead; punishment of the offender is the object sought; this end implies that the subject to be punished should be within the power of the tribunal that is to inflict it. The right of a person accused of an offense to appear and defend himself is recognized by section 10 of article 2 of our present constitution. ' “In - any
 
 *528
 
 trial in any court the party accused shall be allowed to appear and defend in person or by counsel,” etc.
 

 It may be said that in the case before us the above constitutional provision was not violated because the absence of the accused was voluntary. This conclusion doubtless is sound, and the constitutional provision was invoked not to show that a constitutional right had been violated but merely to show the importance attached by the fundamental law of the state to the right of an accused person to be present when on trial for an offense. It is a right of which he cannot be deprived by any power within the state. That the legislature may authorize a court or magistrate to try, while voluntarily absent, one who has been fully apprised of the nature of the charge against him, may be conceded. And in respect of a certain class of offenses,
 
 i. e.,
 
 misdemeanors, such trial under certain conditions is authorized by section 7301, Revised Statutes. That statute, however, attaches this condition: the person accused must request in writing to be tried in his absence. This provision of itself raises an implication that without his written request one accused of an offense could not be tried in his absence. If this section is not limited in its operation to cases in the court of common pleas or possibly probate court, but should be held to include mayors’ courts as well, and further if the phrase “a misdemeanor” therein used should be held to include an offense committed in violating a village ordinance, nevertheless it would not authorize the action of the plaintiff in error in trying the defendant in error while absent, because to authorize the mayor to try him while
 
 *529
 
 thus absent he must have requested in writing to be thus tried. Now,. this was not done. And for this reason, the statute (section 7301) even if otherwise applicable would afford no justification for trying defendant in error in his absence.
 

 Some courts and authorities have contended that the same immunity granted the courts of general jurisdiction for mistakes on passing on questions of their jurisdiction should be extended to magistrates and courts of limited jurisdiction. Still further it has been suggested that as the latter class of officers possess less knowledge of the law, and for that reason are more liable to make mistakes than the judges who preside in courts of general-jurisdiction, they should have a greater immunity, where they act in good faith and free from malice. If in fact any apparent distinction in this respect exists, it g’rows out of the different presumptions that the law indulges in regard to the jurisdiction of the two classes of courts. The presumption in regard to courts of general jurisdiction is that the court has acted within the scope of its jurisdiction, while no such presumption in favor of the jurisdiction of courts of limited jurisdiction is indulged. Cooley on Torts, 487, and Notes 2 and 3. The authorities are quite unanimous in holding- that the acts of any court, whether its jurisdiction is genera], or limited only, is void unless within the scope of its authority. But no discussion of the immunity extended to courts of general jurisdiction for their mistakes is necessary, and it is equally unnecessary to enter upon any extended comparison between the immunity with which the two classes of courts are clothed,
 
 i. e.,
 
 between those of a court of general jurisdiction and those of a court of limited jurisdiction.
 

 
 *530
 
 We are dealing with a tribunal of the latter class and can indulge no presumption in favor of its jurisdiction, and are constrained to hold that the statutes of Ohio give no power to the plaintiff in error to try the defendant in his absence and that in doing so he exceeded his jurisdiction. We have discovered no case possessing the features of the one before us, but a number of cases having some analogy to it, where an act of a tribunal was held to exceed its jurisdiction are to be found, among them are
 
 Knowles
 
 v.
 
 Davis,
 
 2 Allen (Mass.), 61;
 
 Clarke
 
 v.
 
 May,
 
 and
 
 Whipple
 
 v.
 
 Kent et al.,
 
 2 Gray (Mass.), 410;
 
 Briggs
 
 v.
 
 Wardwell,
 
 10 Mass., 356;
 
 Vanderpool
 
 v.
 
 State,
 
 34 Ark., 174;
 
 Patzack et al.
 
 v.
 
 Von Gerichten et al.,
 
 10 Mo. App., 424;
 
 Mitchell
 
 v.
 
 Foster et al.,
 
 12
 
 A. &
 
 E., 472.
 

 That tribunals of limited jurisdiction must at their peril keep within their jurisdiction is a rule established in this state by the case of
 
 Truesdell
 
 v.
 
 Combs,
 
 33 Ohio St., 186, where it was held that:
 

 ‘£ 1. Justices of the peace, while acting within the scope of their authority, are not answerable in a private action for the erroneous exercise of the judicial functions with which they are invested by law.
 

 ££b2. But such justices, and other inferior tribunals, which are invested only with spécial jurisdiction, and clothed with limited authority, must, at their peril, keep within their prescribed jurisdiction; and if they transcend the limits of their authority, they are answerable to anyone whose rights are thereby invaded.
 

 ££3. And, in such a case, honesty of purpose, while it may mitigate damages, cannot justify a clear usurpation of power.”
 

 The petition filed in the court of common pleas, we think, shows that plaintiff in error exceeded
 
 *531
 
 his jurisdiction by proceeding to try and convict defendant in error while the latter was absent and that the judgment rendered on such conviction was void and afforded no justification for the sub-, sequent imprisonment of defendant in error.
 

 Judgment affw'-med.